[Hays v. Lemoine.]

# Hays *v.* Lemoine.

*Ejectment*

(Decided June 4, 1908. 47 South. 97.)

1. *Curtesy; Tenant by; Ejectment.*—Where one dies intestate leaving a widow and child, the lands belonging to the intestate at the time of his death, not a part of the homestead or appurtenant thereto, descends to the child, subject to the widow's right of dower, and upon the death of the child without a will, leaving a husband, a life estate in the land vests in the husband subject to the right of dower of the widow, which, on the widow's death, would enable him to maintain ejectment against all persons not showing a better title.

2. *Ejectment; Evidence; Setting Aside Grant.*—Where it is agreed that the land in suit was set apart to one S., father of plaintiff's deceased wife, as the interest of S. in his father's estate, a reasonable inference is afforded thereby that such land belonged to such estate, that it was legally set apart to S. and that S.'s title continued to the time of his death, and is sufficient, in connection with the other evidence, to make a prima facie case for plaintiff.

3. *Trial; Right of Party to Try Cause on Illegal Evidence.*—Parties having a right to try their cause on illegal evidence if they desire to, and such evidence being in the record without objection will be considered by this court in connection with the other evidence.

4. *Husband and Wife; Widow; Rights in Real Estate; Dower.*—Unless the husband resided on the land while living, or the land is appurtenant to that on which he did reside, the widow is not entitled to possession of such land until dower is assigned her out of the same.

5. *Adverse Possession; Possesion by Dowress; Character.*—Although possession by a dowress of land belonging to the estate of her husband was begun in amity with the heirs of the estate, it may thereafter become hostile to the title of the heirs, and if continued for the requisite period, may ripen into a perfect title by adverse possession.

6. *Same; Instruction.*—A charge asserting that there is no legal evidence in the case that the lands had ever been sold for non payment of taxes, and that therefore, the statute of limitations for five years had no application, is not objectionable.

7. *Same.*—Where defendant claimed through one C. a charge asserting that if the jury find from the evidence that C. was the widow of S. (through whom plaintiff claims) and that C. occupied the property as such widow and claimed the property, her claim is presumed to be in accordance with her rights as such widow, and if her claim was as such widow there is no question of adverse possession by the defendant, is properly given.

C 30

8. *Same.*—If the widow goes into possession of the land under her rights as such widow adverse possession will not begin to run in her favor against the heirs until knowledge of her adverse claim is brought home to the heirs.

10. *Same; Misleading Instructions.*—A charge asserting that if the jury believe from the evidence that the widow took possession of lands as such widow, then her subsequent actual possession of land would not be notice to the heirs that she claimed adversely; and one asserting that under such a state of fact the jury could not find that her possession became adverse from the mere fact that she thereafter held actual possession is each misleading.

11. *Charge of Court; Instructions; Submitting Question of Law to Jury.*—A charge asserting that if the jury believe that C., now deceased, had possession of land under claim of ownership and adverse to all the world from a period from about 1875 to 1885, and if they find that at and just before her death in 1901, she had such adverse possession, then the presumption is that during the intervening time between 1885 and her death her adverse possession continued, and would operate as a bar to this suit under the defense of adverse possession, referred a·question of law to the jury and is objectionable.

12. *Same; Misleading and Argumentative Instructions.*—A charge asserting that the widow is only allowed dower of a one third part of the real estate of which the husband died seized and possessed, and if the jury believe from the evidence that at the time of the husband's death he was not so seized and possessed, then the widow is not entitled to dower; and even if the widow was entitled to dower in the land, not a part of the dwelling house or contiguous thereto, or a part of the lands or plantations contiguous to or part of the plantation or lands connected therewith, then there would not be any dower right, is argumentative and properly refused.

13. *Adverse Possession; Instruction.*—Charges as to adverse possession, in describing the length of time required to perfect title thereby, should use the word, consecutive, in connection with the word, years, and if they fail to do so, they are erroneous.

14. *Appeal and Error; Harmless Error.*—It is harmless error to exclude competent testimony where it appears that such evidence was otherwise admitted without objection.

15. *Evidence; Opinion Evidence; Conclusion of Witness.*—A witness may state, in an ejectment suit, that the witness knew that one C. claimed the property as her own and that she claimed it continuously to her death as her own.

APPEAL from Mobile Circuit Court.

Heard before Hon. Samuel B. BROWNE.

Ejectment by Robert A. Lemoine against Fannie Hays. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

[Hays v. Lemoine.]

Lemoine claims the land as a life tenant of his deceased wife, Anna Steele Lemoine, who died intestate March, 1873, and who was the daughter of Ben C. Steele, who died intestate in 1857, leaving surviving him his widow, Pauline Steele, now Cullen, and daughter, Anna Steele. Mrs. Cullen died in 1901 leaving a last will and testament, by which she devised the property in question to certain trustees for the benefit of her grandchild, Milburn Cullen. This trustee is L. J. Cullen, who is the landlord of appellant in this suit. The other facts are sufficiently stated in the opinion.

The following charges were given at plaintiff's request: "(1) The court charges the jury that there is no legal evidence in this case that the land sued for has been sold for nonpayment of taxese, and therefore the statute of limitations of five years has no application. (2) If the jury find from the evidence that Pauline Cullen is the widow of the deceased, Steele, and occupied the property as such widow, and that she claimed the property, her claim is presumed to be in accordance with her right as such widow, and if her claim was as such widow there is no question of adverse possession by defendant. ( 3) The court charges the jury that, if they believe from the evidence that Mrs. Cullen went into possession of the lands sued for as the widow of B. C. Steele, then the statute of limitations will not begin to run in her favor until knowledge of such adverse claim is brought home to the plaintiff or those under whom he claims. (4) If the jury believe from the evidence that Pauline Steele took possession of the land sued for as the widow of Ben C. Steele, then the paintiff is entitled to recover, unless the evidence has reasonably satisfied their minds that the plaintiff or those under whom he claims knew that she was holding the lands adversely." "(6) The court charges the

jury that, if they believe from the evidence that Pauline Steele toook possession of the lands sued for as the widow of Ben C. Steele, then her subsequent actual possession alone would not be notice to the plaintiff or those under whom he claims that she claimed adversely. (7) The court charges the jury that, if they believe from the evidence that Pauline Steele entered into possession of the lands sued for as the widow of B. C. Steele, then they cannot find that her possession became adverse from the mere fact that she thereafter held actual possession of the land."

The following charges were refused to the defendant: "(3) The court charges the jury that if they believe from the evidence that Mrs. E. P. Cullen, now deceased, had possession of the land under claim of ownership and adversely to all the world, from a period from about 1875 to 1885, and if they find also that at and just before her death in 1901 she had such adverse possession, then the presumption is that during the intervening time between say 1885 and the death of Mrs. Cullen, the adverse possession of Mrs. Cullen continued, and would operate a bar to this suit under the defense of adverse possession. (4) The widow is only allowed dower of a one-third part of the real estate of which the husband was seised and possessed at the time of his death, and if the jury believe from the evidence that at the time of the death of Steele he was not so seised and possessed, then the widow is not entitled to dower, and even if the widow was entitled to dower in land not a part of the dwelling house and not land contiguous thereto, or a part of the lands on plantation contiguous to or a part of the plantation or land connected therewith, then there would not be any dower right." "(6) The court charges the jury that if the lands were not the dwelling house, nor lands connected with the dwell-

[Hays v. Lemoine.]

ing house or contiguous thereto, or lands adjoining the dwelling place, then the doctrine of the widow's right of quarantine has no place in this suit, and the question is whether the defendant has reasonably satisfied the jury by the whole evidence that defendant and those under whom she claimed has had adverse possession, hostile to all the world, open and notorious, and of such a character as to put the world on notice, and for a period of ten or more years before this suit was brought, then the jury must find for the defendant."

In its oral charge to the jury the court, among other things, said: "The plaintiff claims that after Steele died his widow, as his widow, entered upon and took possession of these lands, and that plaintiff and those under whom he claims had no notice or knowledge of any adverse claim of the widow to these lands; plaintiff claiming that she had a dower interest in them. Plaintiff further claims that she toook possession of all these lands as widow, claiming a dower interest. If you believe that contention true, the plaintiff would be entitled to recover."

C. J. TORREY, and SULLIVAN & STALLWORTH, for appellant. Plaintiff in ejectment must either make proof of title by a regular chain from the government down or possession by some grantor at the time of his conveyance.—*Florence B. & I. Assn. v. Schall,* 107 Ala. 531; *Carl v. The State,* 125 Ala. 103. One who has never had actual possession must rely on the legal title to recover in ejectment.—*T. C. I. & R. R. Co. v. Tutwiler,* 108 Ala. 483. The widow may not retain possession of the land left by her deceased husband before dower is assigned unless it is the land on which they resided or land appurtenant thereto, and the occupation of the widow of

such land is not presumptively a possession under quar-antine rights or as such widow. Her possession may be adverse and hostile to the rights of the heirs.—*Foy v. Wellborn,* 112 Ala. 160; *Johnson v. Oldham,* 126 Ala. 309; *Robinson v. Allison,* 97 Ala. 597; *Kimbrell v. Rodgers,* 90 Ala. 339.

ERWIN & McALEER, for appellee. If Mrs. Cullen took and held possession as widow, then this was not adverse possession.—*Kimbrell v. Rodgers,* 90 Ala. 345; *Watson v. Reynolds,* 54 Ala. 192. The claim of the widow is presumed to be in the right of dower.—*Foy v. Wellborn,* 112 Ala. 163; *Robison v. Allison,* 97 Ala. 597. The subsequent marriage of the widow did not affect this.— *Foy v. Wellborn, supra; Wallace v. Hall,* 19 Ala. 372.

DENSON, J.—If the lot sued for was the property of Benjamin C. Steele at the time of his death, then the legal title descended to his only child, Anna, subject, however, to the widow's right to have dower carved out of it; and on the death of Anna without a will her husband (the plaintiff here) took a life estate in the lot, subject to the same right of the widow. Such was the law at the time of Steele's death in 1857, and continued to be the law unto the present.—Civ. Code 1896, §§ 1504, 2534, and the sections of the previous Codes there cited; *Harlan v. State,* 136 Ala. 150, 33 South. 858; *Thompson v. Thompson,* 107 Ala. 163, 166, 18 South. 247; *Marshall v. Crow,* 29 Ala. 280. This being true, on the death of the widow (Mrs. Cullen), the life estate vested in the husband would enable him to maintain ejectment against all persons not showing a better title.

The only question, then, to be determined on the motion of the defendant to exclude the plaintiff's evidence, based on the ground that it did not make out a prima

facie case, is whether or not there is sufficient evidence to authorize a reasonable inference of title in Benjamin C. Steele at the time of his death. The agreed statement of facts recites that it was agreed between plaintiff and defendant that the property sued for was set apart to Benjamin C. Steele as a part of his interest in his fathter's estate. It seems clear to us that this agreement, if it does not, as against the motion, conclusively show such title, at least affords a reasonable inference that the lot belonged to the father's estate and that it was legally set apart to Benjamin C.; and, this being true, the presumption, in the absence of any proof to the contrary, would be that Benjamin C.'s ownership continued to the time of his death. But we find in the record even more than this: The plaintiff, as a witness, without objection testified that he knew the property had belonged to B. C. Steele, that he knew this through his wife when she was living. It may be true that this evidence is subject to the objection that it is hearsay; but no such objection was made, nor was the motion to exclude put on that ground. It therefore remains as evidence for our consideration. It is the privilege of parties to try their causes on illegal evidence, if they choose so to do. Our conclusion is that at the time the plaintiff rested his case there was sufficient evidence to put the defendant to her defense, and, of consequence, that the motion to exclude all of the evidence was properly overruled.

The defense attempted by the defendant is that Mrs. Cullen never acquired possession of the lot in virtue of any quarantine or dower right as the widow of Benjamin C. Steele, deceased, but that her possession was acquired and held independently of such right, and was an adverse possession held for the length of time and in the manner to constitute in her title as an adverse holder.

The real estate of the deceased husband, if it was his last residence or appurtenant thereto, the widow is entitled to hold in possession until her dower is assigned.— Code 1852, § 1359; Civ. Code 1896, § 1515. But it is conceded in this case that the lot sued for was not the residence of the husband, nor appurtenant thereto. Therefore the doctrine of possession in virtue of the quarantine right is not applicable; and it is distinctly the law in this jurisdiction that the widow is not entitled to possession of real estate of the husband until dower is assigned her, unless he resided on it, or it is appurtenant to that on which he did reside.—*Smith v. Smith,* 13 Ala. 329; *Slater v. Meek,* 35 Ala. 528; *Clary v. Sanders,* 43 Ala. 287; *Benagh v. Turrentine,* 60 Ala. 557; *Clancey v. Stephens,* 92 Ala. 575, 9 South. 522, 524; *Ogbourne v. Ogbourne,* 60 Ala. 616; *McAllister v. McAllister,* 37 Ala. 484; *Waters v. Williams,* 38 Ala. 680; *Bettis v. McNider,* 137 Ala. 588, 34 South. 813, 97 Am. St. Rep. 59; *Kelly v. McGrath,* 70 Ala. 75, 45 Am. Rep. 75. But, assuming that Mrs. Cullen's possession began as that of the widow of the deceased husband, and not in hostility to the title of the heir, yet that possession might be converted into an adverse holding, which, if continued for the required period, would ripen into a perfect title by adverse possession.—*Foy v. Wellborn,* 112 Ala. 160, 20 South. 604; *Stiff v. Cobb,* 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38; *Robinson v. Allison,* 97 Ala. 596, 600, 12 South. 382, 604; *Robinson v. Allison,* 124 Ala. 325, 27 South. 461; *Johnson v. Oldham,* 126 Ala. 309, 28 South. 487, 85 Am. St. Rep. 30.

The defendant offered as evidence, to show color of title, a deed from F. G. Kimball to Mrs. Pauline Cullen; and the bill of exceptions recites that the deed includes the property sued for. The deed purports to have been executed on the 3d day of May, 1867. The bill of excep-

tions contains no evidence which tends to show that Mrs. Cullen had possession of the lot before the execution of this deed; and in view of this fact, coupled with the further fact that Mrs. Cullen had only an inchoate right of dower in the lot without the accompanying right to the possession, it cannot be said as matter of law that Mrs. Cullen's possession began or originated in her right as dowress. On the contrary, while we will not say that the record · does not contain evidence tending to show her possession was taken in subservience to the title of the heir, we do say there is evidence which tends to show her possession was not taken in her right as widow—that it was not taken in subservience to the heir's title. Furthermore, even conceding that her possession began with the view that she was entitled to it as the widow of Steele, we think that under our decisions the evidence is such as to make it a question for the jury as to whether such possession was disclaimed in such manner as to convert it into a hostile holding, and was held for the length of time necessary to bar the plaintiff's right of recovery.—*Foy v. Wellborn,* 112 Ala. 160, 166, 20 South. 604.

The oral charge of the court, excepted to, is merely a statement of the contentions of the plaintiff, and contains no reversible error.

We have been unable to find any fault in charges 1, 2, 3 and 4, given at the request of the plaintiff.

Charges 6 and 7, given for the plaintiff, are, to say the least of them, misleading, and, if requested on another trial, should be refused.

Charge 3, requested by the defendant, is faulty, in that it refers a question of law to the jury. The law fixes and defines the constituent elements that go to make up adverse possession, and a charge upon the subject should hypothesize these elements.

Charge 6, requested by the defendant, was properly refused, if for no other reason, for that it leaves out the word "consecutive" after the word "years."

Charge 4, refused to the defendant, is misleading and argumentative. Moreover, we do not think there is any conflict in the evidence on the point that Steele was seised of the lot in controversy. The charge was properly refused.

Witness L. J. Cullen had testified, without objection or motion to exclude, that Mrs. Cullen claimed the property as her own from 1870 up to the time of her death in 1901; so that the defendant was not injured by the ruling of the court refusing to allow the witness to answer another question calling for a repetition of such evidence.

There is reversible error in the ruling of the court excluding that part of the showing made for the witness Henderson in this language: ' 'I knew that Mrs. Cullen claimed the property as her own, and she claimed it continuously to her death as her own."—*Eagle & Phoenix Co. v. Gibson,* 62 Ala. 369; *Hancock v. Kelly,* 81 Ala. 368, 2 South. 281.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.