# Alabama State Land Co. *v.* Hogue.

## *Ejectment.*

(Decided Dec. 16, 1909. 51 South. 320.)

1. *Adverse Possession; Tenant.*—The possession of a tenant of one who claims to hold by adverse possession inures to the benefit of such claimant and satisfies the requirement of the statute of limitations.

2. *Same.*—Where the father claims the land by adverse possession and the son holds the possession by permission of the father the possession of the son will be treated as the possession of a tenant under the father.

3. *Charge of Court; Inapplicable to Evidence.*—A charge is properly refused where there is no evidence upon which to base it.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Ejectment by the Alabama State Land Company against A. J. Hogue. From a judgment granting insufficient relief the plaintiff appeals. Affirmed.

HOWARD & HUNT, and JOHN B. TALLEY, for appellant.—Counsel discuss assignments of error, but without citation of authority.

No counsel marked for appellee.

SAYRE, J.—Plaintiff sued defendant in ejectment in two actions, the first for the S. ½ of the S. E. ¼ of section 9, and the second for the N. W. ¼ of the N. W.

42—164

¼ of section 15, all in the same township and range. These two suits were consolidated and tried as one. Plaintiff had judgment for a part only of the land in section 9, and for the whole of the land sued for in section 15. By this appeal the plaintiff complains of certain rulings of the trial court which affected its right to recover that part of section 9 as to which its suit failed.

Plaintiff showed muniments of title, thus tracing its title back to the United States. · Defendant relied solely upon adverse possession for more than 10 years. In order to show his possession of a certain part of the land, defendant testified to his son's possession of it for a number of years. The bill of exceptions is not altogether clear in describing the situation, and the diagram accompanying it seems to have been hastily drawn, contains evident inaccuracies, and contributes little, if anything, to our understanding of the case. But we gather that defendant's testimony was that about 18 to 20 years before the time of the trial he had built a house for his son near the southwest corner of the 80 upon which he (defendant) had then lived since 1867. This house was inclosed by a fence, just when does not appear; but two or three years later the son moved into it, and lived there for 8 or 10 years. While there the son cleared and cultivated 12 or 15 acres around the house. He had moved away about 6 or 7 years ago. Defendant lived on the east end of the 80, where he had cultivated inclosed land for many years. About 6 or 7 years before the trial he had built a fence along the northern side of the 80, connecting the inclosures on the east and west ends, thus inclosing the woodland between the cleared lands on either end.

In the course of his examination the defendant testified that his son, while he lived upon the land and was

cultivating it, claimed it as the defendant's land. To this evidence the plaintiff objected, assigning as a ground that it showed an independent trespass by the son, which the defendant could not connect with his own trespass. It is familiar law that continuity is an indispensable element of adverse possession. The general rule respecting the connection of successive dissei- sins is well settled. It s stated by Bigelow, J., in *Saw- yer v. Kendall,* 10 Cush. (Mass.) 244, as follows: "To make a disseisin effectual to give title under it to a sec- ond disseisor, it must appear that the latter holds the estate under the first disseisor so that the disseisin of one may be connected with that of the other. Separate successive disseisins do not aid one another, where sev- eral persons successively enter on land as disseisors, without any conveyance from one to another, or any privity of estate between them, other than that deriv- ed from the mere possession of the estate. Their sever- al consecutive possessions cannot be tacked, so as to make a continuity of disseisin, of sufficient length of time to bar the true owners, of their right of the entry. To sustain separate successive disseisins as constituting a continuous possession, and conferring a title upon the last disseisor, there must have been a privity of es- tate between the several successive disseisors. To create such a privity there must have existed, as between the different disseisors, in regard to the estate of which a title by disseisin is claimed, some such relation as that of ancestor and heir, grantor and grantee, or devisor and devisee." The same rule is stated in much the same lan- guage in *Riggs v. Fuller,* 54 Ala. 141.

This was the rule invoked by the plaintiff in making the objection. But the case presented the question, not whether there had been separate and distinct disseisins, but whether the possession of a son must not be treated

in law as the possession of the father. The son entered under the father. He was in some sort a tenant of the father. Possession by a tenant under one claiming by adverse possession inures to the benefit of the claimant and satisfies the requirements of the statute of limitations.—*Elliott v. Dycke*, 78 Ala. 150. This disposes of the objection made. There was no error in the court's ruling.

The refusal to give charges 22 and 24 is argued. It is sufficient to say of them that they hypothesized facts of which there was no evidence. There was no testimony fixing the time when the son moved into the house prepared for him at the time mentioned in the charge, nor any that the house was torn down and moved away,

Those assignments of errors which are argued have been considered. There is no error in the record.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.